UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| JOE DUNCAN, LORETTA DUNCAN, | ) | |
| CHRIS JACKSON, JASON LYNCH, | ) | |
| DEBBIE JO DUNCAN, and | ) | |
| JOHNNY GROOMS, | ) | |
| | ) | |
| *Plaintiffs,* | ) | |
| *v.* | ) | No.1:03-cv-422 |
| | ) | *Edgar / Carter* |
| JAMES JACKSON, individually, | ) | |
| and the CITY OF SOUTH | ) | |
| PITTSBURGH, TENNESSEE, | ) | |
| RONNIE BURNETT, individually, | ) | |
| and MARION COUNTY, TENNESSEE, | ) | |
| and the FEDERAL BUREAU OF | ) | |
| INVESTIGATION, | ) | |
| | ) | |
| *Defendants.* | ) | |

## MEMORANDUM

Plaintiffs Joe Duncan, Loretta Duncan, Chris Jackson, Jason Lynch, Debbie Jo Duncan, and

Johnny Grooms bring this civil rights action against defendants Sheriff Ronnie Burnett, in his

individual capacity, Marion County, Tennessee ("Marion County"), Chief of Police for the City of

South Pittsburgh, James Jackson, in his individual capacity, and the City of South Pittsburgh ("South

Pittsburgh"). The action challenges the constitutionality of a search conducted at the residence of

Mr. Joe Duncan and Ms. Loretta Duncan on December 26, 2002. Plaintiffs bring claims for

violation of their Fourth and Fourteenth Amendment rights to the U.S. Constitution pursuant to 42

U.S.C. § 1983 ("Section 1983") and 42 U.S.C. § 1981 ("Section 1981"). Plaintiffs seek damages

for the alleged constitutional violations pursuant to 42 U.S.C. § 1988 ("Section 1988"). Plaintiffs

also bring claims for assault and aggravated assault pursuant to Tenn. Code Ann. § 39-13-101 and

-1-

Tenn. Code Ann. § 39-13-102 and state claims for the common law torts of assault and battery and false imprisonment against all defendants. Plaintiffs bring additional claims of trespass and outrageous conduct against Chief Jackson and Sheriff Burnett. This Court has already dismissed the plaintiffs' claims against the Federal Bureau of Investigation ("FBI") without prejudice. [Court Doc. No. 12].

Defendants Chief Jackson, South Pittsburgh, Sheriff Burnett and Marion County all move for summary judgment dismissal of all of the claims brought by plaintiffs. [Court Doc. Nos. 21-1, 27-1]. Plaintiffs oppose the motions by submitting the affidavits of Loretta Duncan, Joe Duncan, and Chris Jackson. [Court Doc. Nos. 33-35, 29].

Pursuant to Federal Rules of Civil Procedure 37 and 41, Sheriff Burnett and Marion County move to dismiss the case brought by Mr. Lynch for his failure to cooperate in discovery and his failure to prosecute his case. [Court Doc. No. 26-1]. Mr. Lynch fails to oppose the motion to dismiss brought by Sheriff Burnett and Marion County.

The Court is not impressed with plaintiffs' submission of untimely affidavits in opposition to the defendants' motions for summary judgment, and the Court notes that plaintiffs offer no explanation for their tardiness. However, after reviewing the record, the Court concludes that defendants' motions for summary judgment must be **GRANTED IN PART** and **DENIED IN PART**. Sheriff Burnett's and Marion County's motion to dismiss will be **GRANTED**.

I.      **Standard of Review**

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The burden is on the moving party to show conclusively that no genuine issue of material fact exists, and the Court must

view the facts and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.*, 105 F.3d 279, 280-81 (6th Cir. 1997); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943 (6th Cir. 1990); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

Once the moving party presents evidence sufficient to support a motion under Fed. R. Civ. P. 56, the nonmoving party is not entitled to a trial merely on the basis of allegations. The nonmoving party is required to come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *White*, 909 F.2d at 943-44; *60 Ivy Street*, 822 F.2d at 1435. The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case with respect to which the nonmoving party has the burden of proof. *Celotex*, 477 U.S. at 323; *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996).

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of the witnesses, and determine the truth of the matter. *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *60 Ivy Street*, 822 F.2d at 1435-36. If the Court concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the evidence presented, it may enter a summary judgment. *Anderson*, 477 U.S. at 251-52; *University of Cincinnati v. Arkwright Mut. Ins. Co.*, 51 F.3d 1277, 1280 (6th Cir. 1995); *LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993).

This Court has dismissed the FBI from this case. [Court Doc. No. 12]. The remaining defendants move for summary judgment. Plaintiffs oppose the motions for summary judgment and file three affidavits in support of their opposition. [Court Doc. Nos. 32-35].

## II.    Background

After reviewing the record in the light most favorable to the plaintiffs, the Court makes the following findings of fact. On December 26, 2002 the FBI requested the back-up assistance of Sheriff Burnett, the Marion County Police Department, Chief Jackson, and the South Pittsburgh Police Department in undertaking a search of the Duncan residence. The FBI informed Sheriff Burnett and Chief Jackson that it had received information that a suspect wanted in connection with a bank robbery in North Georgia might be located at the Duncan residence. [Court Doc. No. 21-3, Affidavit of Paul F. Healy ("Healy Aff."), ¶ 4]. FBI Special Agent Paul Healy considered the individual to be armed and dangerous. *Id.* at ¶¶ 2, 6. The defendants do not allege that they had a valid search warrant to search the property.

Immediately prior to arriving at the Duncan property, Special Agent Healy interviewed two persons who had recently left the Duncan residence. Healy Aff., ¶ 7. Special Agent Healy showed them a photograph of the bank robbery suspect. The couple informed Special Agent Healy that an unknown white male matching the suspect's description was at the Duncan residence. *Id.* Upon arrival at the Duncan property, Special Agent Healy observed a parked white van that matched the description of the vehicle the bank robbery suspect was driving. *Id.* at ¶ 8.

Mr. Joe Duncan, who co-owns the property with Ms. Loretta Duncan, asserts that several law enforcement officials entered his property and pointed firearms at him while he was outside in his garage. [Court Doc. No. 34, Affidavit of Joe Duncan ("J. Duncan Aff."), ¶ 2]. Mr. Duncan asserts

-4-

that he never gave consent to any officer to search his property and that no officer showed him a search warrant. *Id.* at ¶ 3. The law enforcement officials undertook a search of the Duncan property and residence. Mr. Duncan alleges that both Sheriff Burnett and Chief Jackson participated in the search and that they searched his property and his person. *Id.* at ¶ 6. Mr. Jackson also asserts that Mr. Duncan did not give consent to any search of the premises. [Court Doc. No. 35, Affidavit of Chris Jackson ("C. Jackson Aff."), ¶ 3].

Chief Jackson and other law enforcement officials entered the front door of the Duncan residence with their weapons drawn. [Court Doc. No. 33, Affidavit of Loretta Duncan ("L. Duncan Aff."), ¶ 2]. Plaintiffs contend that no one in the home consented to the entrance or the search by the law enforcement officials. L. Duncan Aff. ¶¶ 2, 3. Loretta Duncan describes the situation after the law enforcement officers entered her home in this way:

> At that time they held me and other named plaintiffs at gunpoint, searched us, searched the house and ordered some of those present in the house to leave the residence while they kept us at gunpoint in the kitchen of the house while they further searched the house in our absence.

L. Duncan Aff., ¶ 2.

Law enforcement officials ordered two of the plaintiffs, Johnny Grooms and Debbie Jo Duncan, out of the house. Mr. Grooms alleges that Chief Jackson told him to "come out to the car" and told him that he was "under arrest". [Court Doc. No. 21-7, Deposition of Johnny Grooms ("Grooms Dep."), p. 28-29]. Chief Jackson told Mr. Grooms to put his hands on a police vehicle, and he or another officer handcuffed Mr. Grooms. *Id.* Chief Jackson also asked Ms. Debbie Duncan to come out to the police vehicle, and he allegedly pointed his gun in her direction. *Id.* at pp. 30-32; [Court Doc. No. 21-8, Deposition of Debbie Jo Duncan ("D. Duncan Dep."), pp. 35-44]. When Ms. Debbie Duncan came outside, Chief Jackson told her to put her hands on the car. D. Duncan Dep.,

pp. 35-44.  She asked what was happening several times, and Chief Jackson allegedly told her to "shut up."  *Id.*  Chief Jackson never touched Ms. Duncan or placed handcuffs on her.  *Id.* at pp. 37-38.  Ms. Duncan asked Chief Jackson if she could just place her hands over the car because she was cold and did not have her jacket.  *Id.* at p. 41.  Chief Jackson told her to "shut up and keep her hands on the car."  *Id.*  Chief Jackson describes the situation in this way:

> The FBI ordered at least one individual away from the home and toward my position.  Following standard police procedures, I or another of the backup officers near my position secured that individual or individuals and maintained security over them until such time as their identities were discovered and the FBI determined that the suspect was not present.  At the time the FBI determined that their investigation was completed, the individual(s) was then released.

[Court Doc. No. 22, Affidavit of James Jackson ("J. Jackson Aff."), ¶ 9].  While she was standing at the police car, Ms. Debbie Duncan complained to Sheriff Burnett that her infant was still in the house in an unsafe area.  She asked Sheriff Burnett if she could return to the house to check on her child.  D. Duncan Dep., p. 41.  Sheriff Burnett allowed her to retrieve her child.  *Id.*

The record reveals that the search lasted somewhere between 10 and 30 minutes.  [Court Doc. No. 21-3, Healy Aff., ¶ 11; Court Doc. No. 27-2, Deposition of Ronnie Burnett ("Burnett Dep."), p. 36].  After the search ended, the law enforcement officials left the Duncan property.  *Id.* Plaintiffs assert that both Sheriff Burnett and Chief Jackson participated in the search.  L. Duncan Aff., ¶ 6; J. Duncan Aff. ¶ 6.

Plaintiffs allege that they never took any "aggressive or threatening posture or actions" against the officers, but were nevertheless held at gunpoint during the search.  L. Duncan Aff., ¶¶ 4, 7; J. Duncan Aff., ¶¶ 4, 7-8; C. Jackson Aff., ¶¶ 4, 7-8.  The defendants contend that the plaintiffs consented to the search.  However, for purposes of this motion, the Court must view the record in

the light most favorable to the plaintiffs. The Court finds that the plaintiffs raise a genuine issue of material fact regarding whether they consented to the search. L. Duncan Aff., ¶ 3; J. Duncan Aff., ¶3; C. Jackson Aff., ¶ 3.

## III. Analysis

### A. Section 1983 Claims

Section 1983 states in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. To establish a claim pursuant to Section 1983, plaintiffs must demonstrate two elements: "(1) the defendants deprived [plaintiffs] of a right, privilege, or immunity secured to [them] by the United States Constitution or other federal law; and (2) the defendants caused the deprivation while acting under color of state law." *Cunningham v. Sisk*, 2003 WL 23471531, *5 (E.D. Tenn. 2003) (citing *Gregory v. Shelby County, Tenn.*, 220 F.3d 433, 441 (6th Cir. 2000)). Only the first prong of the test is relevant in this action because the defendants do not dispute that they were acting under color of state law during the search of the Duncan property.

Section 1983 " 'creates no substantive rights; it merely provides remedies for deprivations of rights established elsewhere.' " *Alexander v. Haymon*, 254 F.Supp.2d 820, 830 (S.D. Ohio 2003) (quoting *Gardenhire v. Schubert*, 205 F.3d 303, 310 (6th Cir. 2000)). Plaintiffs allege that the defendants violated their Fourth and Fourteenth Amendment rights under the U.S. Constitution. U.S. Const. amend. IV; U.S. Const. amend. XIV.

### 1. __Individual Defendants__

Chief Jackson and Sheriff Burnett argue that the doctrine of qualified immunity applies and shields them from liability for any alleged constitutional violations in this case. The doctrine of qualified immunity "shields 'government officials performing discretionary functions . . . from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'" *Solomon v. Auburn Hills Police Dep't*, 389 F.3d 167, 172 (6th Cir. 2004) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). The U.S. Supreme Court has established a two-part test for determining whether a law enforcement officer is entitled to qualified immunity. *See Lyons v. City of Xenia*, 417 F.3d 565, 571 (6th Cir. 2005) (citing *Brosseau v. Haugen*, __ U.S. __, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004)). Under this test district courts must:

> consider whether 'the facts alleged show the officer's conduct violated a constitutional right.' . . . If the plaintiff can establish that a constitutional violation occurred, a court should ask 'whether the right was clearly established . . . in light of the specific context of the case, not as a broad general proposition.'

*Lyons*, 417 F.3d at 571 (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)).

Once the defendants claim the affirmative defense of qualified immunity, the burden shifts to the plaintiffs to demonstrate that the defendants are not entitled to the defense of qualified immunity. *Myers v. Potter*, __ F.3d __, 2005 WL 2138543, *4 (6th Cir. 2005) (citing *Gardenhire v. Schubert*, 205 F.3d at 311). When a defendant moves for summary judgment and asserts the defense of qualified immunity, the plaintiffs must "1) identify a clearly established right alleged to have been violated; and 2) establish that a reasonable officer in the defendant's position should have

known that the conduct at issue was undertaken in violation of that right." *Pray v. City of Sandusky*, 49 F.3d 1154, 1159 (6th Cir. 1995) (citing *Johnson v. Estate of Laccheo*, 935 F.2d 109, 111 (6th Cir. 1991)).

In analyzing whether a right is "clearly established" the Supreme Court has determined that " '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Myers*, 2005 WL 2138543 at *8 (quoting *Anderson*, 483 U.S. at 639-40). Whether a right is " 'clearly established' " must be viewed in " 'light of preexisting law' " and the " 'unlawfulness must be apparent.' " *Myers*, 2005 WL 2138543 at *8 (quoting *Anderson*, 483 U.S. at 640). The Sixth Circuit looks first to the decisions of the U.S. Supreme Court, then to its own decisions, then to other decisions within the Sixth Circuit, and finally to decisions of other circuits in determining whether a constitutional right has been "clearly established." *Myers*, 2005 WL 2138543 at *8.

The threshold issue to analyze is whether defendants violated a constitutional right. *Centanni v. Eight Unknown Officers*, 15 F.3d 587, 589 (6th Cir. 1994). Plaintiffs allege in their complaint that the defendants' search of the Duncan property violated their Fourth and Fourteenth Amendment rights. The Fourth Amendment to the United States Constitution provides that:

> [t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

The Fourteenth Amendment makes the Fourth Amendment applicable to the states. U.S. Const. amend. XIV; *see Michigan v. Summers*, 452 U.S. 692, 694 n.2, 101 S.Ct. 2587, 69 L.Ed.2d

-9-

340 (1981). Where plaintiffs' claims under the Fourteenth Amendment arise out of a common nucleus of facts and pertain to an alleged wrongful search or seizure, it is appropriate to analyze such claims under the reasonableness standard of the Fourth Amendment instead of an analysis of substantive due process rights. *See e.g. Alexander v. Beale Street Blues Co.*, 108 F.Supp.2d 934, 940 (W.D. Tenn. 1999); *see also, Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989); *U.S. v. Lanier*, 520 U.S. 259, 272 n.7, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997). Thus, the Court analyzes whether an unreasonable search or seizure by Sheriff Burnett or Chief Jackson in violation of plaintiffs' Fourth Amendment rights occurred.

### a. Unreasonable Search

The plaintiffs claim that the search of the Duncan property constituted an unreasonable search under the Fourth Amendment. Whether a search or seizure is reasonable "depends on a balance between 'the need to search [or seize] against the invasion which the search [or seizure] entails.' " *Centanni*, 15 F.3d at 590 (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)).

The United States Supreme Court has made clear that "[i]t is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (citations and quotations omitted). Although consent to a search is an exception to the need for a warrant, the Supreme Court has explained the definition of consent:

> [w]e hold only that when the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or

implied. Voluntariness is a question of fact to be determined from all the circumstances . . . .

*Id.* at 248-49. Defendants have the burden of demonstrating consent was given freely and voluntarily. *Florida v. Royer*, 460 U.S. 491, 497, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983).

In the instant action the plaintiffs produce evidence indicating that no owner of the property gave consent for the defendants to search the garage or the residence and that Sheriff Burnett and Chief Jackson participated in the search. L. Duncan Aff., ¶¶ 3, 6; J. Duncan Aff., ¶¶ 3, 6. Although the defendants dispute this, on summary judgment the Court must view the facts in the light most favorable to the plaintiffs. Defendants do not contend that they had a valid search warrant nor do they contend that any other exception to the need for a warrant, such as exigent circumstances, existed. Thus, the plaintiffs have identified a constitutional violation that Sheriff Burnett and Chief Jackson committed.

The next question to analyze is whether the right to be free from a search without a warrant or any other established exception is a "clearly established" constitutional right. *Lyons*, 417 F.3d at 571. Based on the clear holding in *Schneckloth*, the Court finds that the need for a warrant based on probable cause or the need for the presence of a specifically established exception before a search is undertaken by law enforcement officials is a "clearly established" constitutional right. 412 U.S. at 219 (citing *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)); *see also O'Brien v. City of Grand Rapids*, 23 F.3d 990, 999 (6th Cir. 1994). Therefore, the plaintiffs raise a genuine issue of material fact regarding whether Sheriff Burnett and Chief Jackson participated in an unreasonable search in violation of the Fourth Amendment.

### b. Unreasonable Seizure

Plaintiffs allege in their complaint that defendants violated their right under the Fourth Amendment to be free from unreasonable seizures. To state a claim for unreasonable seizure, plaintiffs must demonstrate that there was a seizure and that the seizure was unreasonable. *Alexander*, 108 F.Supp.2d at 941. It is well-settled that " 'whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person.' " *Summers*, 452 U.S. at 696 n. 5 (quoting *Terry*, 392 U.S. at 16); *see also Smith v. Heath*, 691 F.2d 220, 223 (6th Cir. 1982).

Plaintiffs contend that they were all held at gunpoint while the search of the Duncan property was undertaken. L. Duncan Aff., ¶ 7; J. Duncan Aff., ¶¶ 6-7; Jackson Aff., ¶¶ 6-7; Grooms Dep., pp. 28-29, 30-32; D. Duncan Dep., pp. 35-44. Because the record suggests that both Chief Jackson and Sheriff Burnett played a role in restraining the liberty of plaintiffs, the Court finds that they "seized" plaintiffs for purposes of Fourth Amendment analysis. *See Summers*, 452 U.S. at 696 n. 5 (quoting *Terry*, 392 U.S. at 16). Handcuffing and detention of individuals through the use of weapons that deprives individuals of their freedom of movement constitutes a seizure. *Ingram v. City of Columbus*, 185 F.3d 579, 591 (6th Cir. 1999).

However, the inquiry does not end there. To determine whether a constitutional violation occurred, the Court must analyze whether the seizure was unreasonable within the meaning of the Fourth Amendment. The Supreme Court has made clear that "not all seizures of the person must be justified by probable cause to arrest for a crime" and "reasonable suspicion of criminal activity warrants a temporary seizure for the purpose of questioning limited to the purpose of the stop." *Royer*, 460 U.S. at 498 (citing *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 607 (1975); *United States v. Brignoni-Ponce*, 422 U.S. 873, 881-882, 95 S.Ct. 2574, 2580-2581, 45

-12-

L.Ed.2d 607 (1975)).  However, "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop" and the "investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time."  *Royer*, 460 U.S. at 500; *see also Bennett v. City of Eastpointe*, 410 F.3d 810, 836 (6th Cir. 2005).

The Sixth Circuit has held that "[l]aw enforcement officials have a limited authority to detain occupants of a premises while a proper search is being conducted."  *United States v. Bohannon*, 225 F.3d 615, 616 (6th Cir. 2000).  Defendant officers may establish that a detention, not supported by probable cause, is reasonable if "'1) [ ] the officer's conduct is supported by articulable suspicion, and 2) [ ] detention and investigative methods used were reasonable under the circumstances.' " *United States v. Heath*, 259 F.3d 522, 529 (6th Cir. 2001) (quoting *United States v. Winfrey*, 915 F.2d 212, 216 (6th Cir. 1990)).   The first prong requires that there must be a reasonable, articulable suspicion of criminal activity.  *United States v. Avery*, 137 F.3d 343, 352 (6th Cir. 1997).  The Sixth Circuit "permits the use of force, such as handcuffs and guns, to effect a stop when such a show of force is reasonable under the circumstances of the stop."  *Heath*, 259 F.3d at 530 (citing *Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 815 (6th Cir. 1999); *United States v. Hardnett*, 804 F.2d 353, 356-57 (6th Cir. 1986)).

In the instant action, defendants were not conducting a proper search based on a warrant, consent or exigent circumstances.  Nor do Sheriff Burnett or Chief Jackson present evidence of a reasonable, articulable suspicion that any plaintiff was committing a crime in their presence. Further, they present no evidence of a fear for their personal safety or a risk of flight.  Based on the

-13-

record before it, the Court finds that plaintiffs have identified a potential constitutional violation of unreasonable seizure.

Defendants argue that they were merely providing back-up assistance to the FBI. The Sixth Circuit has determined that "[a]s a general rule, mere presence at the scene of a search, without a showing of direct responsibility for the action will not subject an officer to liability." *Ghandi v. Police Department of the City of Detroit*, 747 F.2d 338, 352 (6th Cir. 1984). Police officers are acting within the scope of their qualified immunity if they have "no direct involvement in the search" or if their "only function was to insure the integrity of the search by having uniformed officers visible on the scene." *Id.* at 352. However, in the instant action, plaintiffs present evidence that Sheriff Burnett and Chief Jackson participated in the unreasonable search and seizure. L. Duncan Aff., ¶ 6; J. Duncan Aff., ¶¶ 6-8; C. Jackson Aff., ¶¶ 6-8. Thus, defendants' argument that they participated only as back-up support to the FBI is unavailing. Further, a reasonable officer in defendants' position would have known that seizing the plaintiffs while undertaking a search without a warrant, consent, or exigent circumstances violated clearly established law. Viewing the totality of the circumstances, the Court finds that a genuine issue of material fact exists regarding whether defendants' seizure of plaintiffs was reasonable under Fourth Amendment principles. Therefore, the Court will **DENY** Sheriff Burnett's and Chief Jackson's motions for summary judgment on the plaintiffs' Section 1983 claim for violation of their Fourth and Fourteenth Amendment rights.

### 2. <u>Municipal Defendants</u>

The United States Supreme Court has held that municipalities are included as persons within the meaning of Section 1983, and therefore plaintiffs may sue municipalities for relief under the statute. *Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611

(1978). However, a municipality may not be held liable under Section 1983 under a theory of respondeat superior. *Bennett*, 410 F.3d at 818 (citing *Monell*, 436 U.S. at 691). Municipalities are only liable under Section 1983 if they have an established policy or custom that causes the alleged injury. *See Monell*, 436 U.S. at 690.

> A municipality may be held liable only 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.' Furthermore, for municipal liability, there must be an 'affirmative link between the policy and the particular constitutional violation alleged.' The claimant has the burden of proof for establishing the existence of an unconstitutional policy and demonstrating the link between the policy and the alleged injuries at issue.

*Bennett*, 410 F.3d at 818-19 (quotations and citations omitted). Plaintiffs must prove that their particular injuries were "incurred because of the execution of the policy or custom." *Cunningham*, 2003 WL 23471541 at *14 (citing *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 387, 405 (1997); *Gregory*, 220 F.3d at 442; *Doe v. Claiborne County, Tennessee*, 103 F.3d 495 (6th Cir. 1996); *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).

This Court has noted that a custom must " 'be so permanent and well settled as to constitute a custom or usage with the force of law.'" *Cunningham*, 2003 WL 23471541 at *14 (quoting *Monell*, 436 U.S. at 691). Plaintiffs may establish a policy or custom in several ways. There may be an official policy that defendants promulgated. *Id.* Plaintiffs may also show a "pervasive custom or practice of which the [ ] lawmakers either know or reasonably should know." *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985)). Such a custom must be "so widespread and commonly accepted as to in effect have the force of law." *Cunningham*, 2003 WL 23471541 at *14 (citing *Brown*, 520 U.S. at 404; *Monell*, 436 U.S. at 690-91). Plaintiffs can also establish the requisite policy or custom for purposes of Section 1983 by

-15-

demonstrating that an official with policymaking authority has taken a single act relating to the subject matter or area at issue. *Cunningham*, 2003 WL 23471541 at \*14 (citing *City of St. Louis v. Paprotnik*, 485 U.S. 112, 127, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); *Pembauer v. City of Cinncinnati*, 475 U.S. 469, 480-81, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)).

Plaintiffs present no evidence of any policy or custom, either official or unofficial, on the part of either Marion County or South Pittsburgh relating to the alleged violation of their constitutional rights. It is plaintiffs' burden to produce evidence of a policy, an injury, and a link between the policy and their injury. *See Bennett*, 410 F.3d at 818-19. Plaintiffs have failed to establish evidence of the requisite policy, an injury to them, or any link between an alleged policy and the injury.

Plaintiffs could also demonstrate liability under Section 1983 against Marion County and South Pittsburgh by showing that these governmental agencies failed properly to train and supervise their employees. *Cunningham*, 2003 WL 23471541 at \*15. Liability under this theory will exist only if plaintiffs "can prove that the [governmental agencies'] failure to train evidences deliberate indifference to the rights of its inhabitants such that the failure to train in effect constitutes a governmental custom or policy within the *Monell* framework." *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). The standard of "deliberate indifference" is a stringent one and requires proof that the defendants "disregarded a known or obvious consequence" of their actions. *Cunningham*, 2003 WL 23471541 at \*15 (citing *Brown*, 520 U.S. at 410). Plaintiffs must show that the governmental entity was aware of the unconstitutional acts of its employees and failed to respond. *Cunningham*, 2003 WL 23471541 at \*15 (citing *City of Canton*, 489 U.S. at 390-91). Plaintiffs do not make out a Section 1983 claim with a showing that

-16-

their particular injury could have been avoided with additional or better training. *Cunningham*, 2003 WL 23471541 at *15 (citing *City of Canton*, 489 U.S. at 390-91; *Mayo v. Macomb County*, 183 F.3d 554, 558 (6th Cir. 1999)).

In the instant action plaintiffs demonstrate no evidence of a failure to train or supervise by South Pittsburgh or Marion County. Because plaintiffs fail to introduce evidence creating a genuine issue of material fact regarding an unlawful policy or a failure to train by defendants South Pittsburgh and Marion County, this Court will **DISMISS** plaintiffs' Section 1983 claims against South Pittsburgh and Marion County.

### B.     Section 1981 Claims

Section 1981 prohibits intentional discrimination on the basis of race. *Cunningham*, 2003 WL 23471541 at *15 (citing *General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982)). The statute provides in pertinent part that all individuals within the jurisdiction of the United States "shall have the same right in every State . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . ." 42 U.S.C. § 1981(a). To establish a prima facie case under Section 1981, the plaintiffs must demonstrate three elements: (1) membership of a racial minority; (2) defendants acted with an intent to discriminate against plaintiffs on the basis of race; and (3) such intentional race discrimination concerned a protected activity listed in 42 U.S.C. § 1981(a). *Cunningham*, 2003 WL 23471541 at *16 (citing *Morris v. Office Max, Inc.*, 89 F.3d 411, 413-14 (7th Cir. 1996); *Green v. State Bar of Texas*, 27 F.3d 1083, 1086 (5th Cir. 1994)).

Plaintiffs have not alleged in their complaint that they are members of a racial minority. [Court Doc. No. 1]. Nor does the record indicate the race of any of the plaintiffs. Because plaintiffs

-17-

fail to demonstrate the first prong of a prima facie case under Section 1981, this Court will **DISMISS** their Section 1981 claims against all defendants.

### C. State Law Claims

Plaintiffs bring claims for alleged violations of various state laws against all defendants. They assert violations of Tenn. Code Ann. § 39-13-101 and Tenn. Code Ann.§ 39-13-102 for assault and aggravated assault, as well as claims for the common law torts of assault and battery and false imprisonment against all defendants. Plaintiffs also bring claims against Chief Jackson and Sheriff Burnett, in their individual capacities, for outrageous conduct and trespass.

Defendants request that this Court decline to exercise supplemental jurisdiction over the state law claims in the instant action. Defendants argue that under the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. §§ 29-20-101 et seq. ("TGTLA"), Tennessee state courts retain exclusive jurisdiction over claims arising under the TGTLA. Tennessee Code Annotated § 29-20-307 provides that "[t]he circuit courts shall have exclusive original jurisdiction over any action brought under this chapter and shall hear and decide such suits without the intervention of a jury." The TGTLA requires that all claims must be brought in "strict compliance" with the Act. Tenn. Code Ann. § 29-20-201(c). The Act provides that "[e]xcept as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary." Tenn. Code Ann. § 29-20-201(a). The TGTLA removes immunity for negligent actions of employees unless such actions were related to discretionary functions or certain enumerated intentional torts. Tenn. Code Ann. § 29-20-205.

-18-

In *Beddingfield v. City of Pulaski, Tennessee* the district court declined to exercise jurisdiction over pendent state law claims of wrongful death and violation of the Tennessee Constitution "in the face of the limitations upon suability specified in Tenn. Code Ann. § 39-20-307." 666 F.Supp. 1064-66 (M.D. Tenn.), *rev'd on other grounds*, 861 F.2d 968 (6th Cir. 1988). 28 U.S.C. § 1367(c) provides that "district courts may decline to exercise supplemental jurisdiction over a claim . . . . if – . . . (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). The Sixth Circuit has determined that "the Tennessee legislature expressed a clear preference that TGTLA claims be handled by its own state courts. This unequivocal preference of the Tennessee legislature is an exceptional circumstance for declining jurisdiction." *Gregory*, 220 F.3d at 446.

In *Gregory*, the Sixth Circuit affirmed the magistrate judge's dismissal of the state law claims against a law enforcement officer acting in his official capacity. 220 F.3d at 446. Similarly, in *Maxwell v. Conn* the Sixth Circuit affirmed the district court's decision to dismiss the plaintiff's pendent state law claims against defendant sheriff department employees without prejudice based on the exclusivity provision in the TGTLA. 893 F.2d 1335, 1990 WL 2774 *3-4 (6th Cir. 1990). *See also, Millender v. Bowman*, 2004 WL 2238526 *3 (W.D. Tenn. 2004); *Spurlock v. Whitney*, 971 F.Supp. 1166, 1185 (M.D. Tenn. 1997); *Timberlake v. Benton*, 786 F.Supp. 676, 696 (1992).

Because the TGTLA provides that exclusive jurisdiction for claims arising under the Act rest with Tennessee state courts, this Court will **DISMISS WITHOUT PREJUDICE** the plaintiffs' state statutory and common law claims against the City of South Pittsburgh and Marion County.

Plaintiffs have brought identical claims of assault and battery, assault under Tenn. Code Ann.

-19-

39-13-101, aggravated assault under Tenn. Code Ann. 39-13-102, and false imprisonment against Chief Jackson and Sheriff Burnett in their individual capacities. As the district court noted in *Timberlake*, the TGTLA "addresses the liability of governmental entities only. Its jurisdictional limitations do not apply to persons sued individually." 786 F.Supp. 676, 697 (M.D. Tenn. 1992). Therefore, this Court will retain jurisdiction over plaintiffs' state law claims against Chief Jackson and Sheriff Burnett.

The TGTLA provides that "[n]o claim may be brought against an employee or judgment entered against an employee for damages for which the immunity of the governmental entity is removed by this chapter . . ." Tenn. Code Ann. § 29-20-310(b). The Act also provides that:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:
> (1) The exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused;
> (2) false imprisonment pursuant to a mittimus from a court, false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of the right of privacy, or civil rights; . . .

Tenn. Code Ann. § 29-20-205. The grant of immunity for certain intentional torts applies only to the torts specifically enumerated in the statute. *Limbaugh v. Coffee Medical Services*, 59 S.W.3d 73, 84 (Tenn. Sup. Ct. 2001). Where the TGTLA specifically removes immunity of a governmental entity for certain torts, courts have held that the governmental employee may not be sued individually for the same tort pursuant to Tenn. Code Ann. § 29-30-310(b). *See Alexander v. Newman*, 345 F.Supp.2d 876, 886 (W.D. Tenn. 2004) (dismissing claim of assault and battery against officer sued in his individual capacity); *see also Erwin v. Rose*, 980 S.W.2d 203, 206 (Tenn. Ct. App. 1998). Because the TGTLA does not specifically grant immunity to the City of South

-20-

Pittsburgh or Marion County for the torts of assault and battery, assault under Tenn. Code Ann. § 39-13-101, aggravated assault under Tenn. Code Ann.§ 39-13-102, and false imprisonment, this Court will **DISMISS** plaintiffs' claims against Sheriff Burnett and Chief Jackson for such torts pursuant to Tenn. Code Ann. § 29-30-310(b).

The plaintiffs also bring claims against Chief Jackson and Sheriff Burnett, in their individual capacities, for outrageous conduct. Tennessee courts have defined the tort of outrageous conduct as:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. [T]here are three essential elements to a cause of action: (1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury.

*Beale St. Blues, Co.*, 108 F.Supp.2d at 946 (internal citations omitted) (quoting *Bain v. Wells*, 936 S.W.2d 618, 622 n.3 (Tenn. 1997). Sheriff Burnett's and Chief Jackson's alleged actions do not rise to the level of being intolerable in a civilized society. The Court concludes that the facts alleged by the plaintiffs do not create a genuine issue of material fact regarding their claim of outrageous conduct. The Court will **DISMISS** the tort of outrageous conduct against Sheriff Burnett and Chief Jackson.

Plaintiffs also bring a claim against Sheriff Burnett and Chief Jackson for the tort of trespass. Tennessee courts define trespass as the unauthorized entry upon another's real property. *See Morrison v. Smith*, 757 S.W.2d 678, 681 (Tenn. Ct. App. 1988). Due to plaintiffs' evidence that they did not invite defendants on their property and that they did not consent to defendants' search

-21-

of the property, the Court finds that plaintiffs have created a genuine issue of material fact regarding whether Sheriff Burnett and Chief Jackson committed the tort of trespass.

### D.    Motion to Dismiss

Defendants move to dismiss the instant action brought by Mr. Lynch for his failure to prosecute his claim and his failure to cooperate in discovery. [Court Doc. No. 26-1]. Federal Rule of Civil Procedure 37(d) states that:

> [i]f a party . . . designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails (1) to appear before the officer who is to take the deposition, after being served with a proper notice, . . . the court in which the action is pending on motion may make such orders in regard to the failure as are just, and among others it may take any action authorized under subparagraphs (A), (B), and (C) of subdivision (b)(2) of this rule.

Fed. R. Civ. P. 37(d). Federal Rule of Civil Procedure 37 (b) states in relevant part:

> [i]f a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following: (C) An order . . . dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party . . .

Fed. R. Civ. P. 37(b)(2)(C). Federal Rule of Civil Procedure 41(b) provides that "[f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant." Fed. R. Civ. P. 41(b).

The Sixth Circuit has directed courts to consider four factors when determining whether to dismiss an action pursuant to Federal Rule of Civil Procedure 37 or Federal Rule of Civil Procedure 41. *See United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002). These factors are:

> (1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.

-22-

*Id.* (citing *Knoll v. American Tel. & Telegraph Co.*, 176 F.3d 359, 363 (6th Cir. 1999)). No one factor will be dispositive, but dismissal will be appropriate if "the record demonstrates delay or contumacious conduct." *Reyes*, 307 F.3d at 458. The plaintiff has the burden of demonstrating that the failure to cooperate in discovery was due to an inability to comply rather than due to willfulness or bad faith. *Id.*

In the instant action, the record demonstrates that Mr. Lynch failed to appear for his scheduled deposition on any of five dates counsel set aside for plaintiff depositions. [Court Doc. No. 26-2]. The record also demonstrates that Mr. Lynch could have appeared on three of those occasions. *Id.* Mr. Lynch fails to oppose defendants' motion to dismiss and fails to oppose the defendants' motions for summary judgment. Mr. Lynch also fails to provide any excuse for his failure to attend his scheduled deposition. Counsel for Mr. Lynch states that he requested Mr. Lynch's presence at the scheduled deposition and that he informed Mr. Lynch that this Court might dismiss his claims against defendants. [Court Doc. No. 26-2].

Based on the record before the Court, it appears that Mr. Lynch's failure to appear on any of several days scheduled for his deposition is due to his own fault. He fails to provide this Court with any other reason for his refusal to cooperate in discovery. The defendants have been prejudiced by Mr. Lynch's failure to cooperate in discovery because they have been unable to obtain factual testimony relevant to their motions for summary judgment. Therefore, they have been unable to brief specific issues relating to Mr. Lynch's claims because they have been unable to determine what his claims are. Trial is approaching in this case, and Mr. Lynch's failure to provide defendants with requested discovery central to their defense against his claims has precluded defendants from obtaining necessary information to prepare for trial and for summary judgment dismissal. Although

this Court has not warned Mr. Lynch that his conduct might warrant dismissal of his case, it appears that his counsel has informed him of that possibility. [Court Doc. No. 26-2]. This Court has not imposed lesser sanctions on Mr. Lynch; however, the parties have not moved for sanctions or to compel discovery from Mr. Lynch.

The Court is aware that dismissal of an action is a penalty of "last resort". *See Beil v. Lakewood Eng'g and Manuf. Co.*, 15 F.3d 546, 552 (6th Cir. 1994). However, the Court finds that based on the facts in the instant action, dismissal is appropriate. Mr. Lynch has the burden of demonstrating that he was unable to comply with discovery, and he has failed to do so. Mr. Lynch appears unconcerned with either the motion to dismiss or the pending motions for summary judgment because he fails to oppose them. For these reasons, this Court will **DISMISS** Mr. Lynch's claims against all defendants.

## IV.     Conclusion

After reviewing the record and the applicable law, the Court concludes that a genuine issue of material fact exists regarding plaintiffs' claims brought pursuant to 42 U.S.C. § 1983 and pursuant to state law for trespass against Sheriff Burnett and Chief Jackson. Defendants' motions for summary judgment on these claims against Sheriff Burnett and Chief Jackson will be **DENIED**.

The Court further concludes that no genuine issue of material fact exists regarding plaintiffs' claims against the City of South Pittsburgh and Marion County pursuant to 42 U.S.C. § 1983. No genuine issue of material fact exists regarding plaintiffs' claims against all defendants pursuant to 42 U.S.C. § 1981. The Court will **DISMISS WITH PREJUDICE** plaintiffs' Section 1983 claims against Marion County and the City of South Pittsburgh and their Section 1981 claims against all defendants.

-24-

Plaintiffs' state law claims of assault, aggravated assault, assault and battery, and false imprisonment against all defendants will be **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction. Plaintiffs' state law claims of outrageous conduct will be **DISMISSED WITH PREJUDICE** against Sheriff Burnett and Chief Jackson. Defendants' motions for summary judgment will be **GRANTED IN PART** and **DENIED IN PART**.

Defendants' motion to dismiss plaintiff Jason Lynch's action against them will be **GRANTED**. Mr. Lynch's claims will be **DISMISSED WITH PREJUDICE**.

A separate order will enter.

*/s/ R. Allan Edgar*
R. ALLAN EDGAR
CHIEF UNITED STATES DISTRICT JUDGE